UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| DAVID SANFORD, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 7:21-cv-00003-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WARDEN JOYNER, | ) | **&** |
| | ) | **ORDER** |
| Respondent. | ) | |

*** *** *** ***

In 2015, federal inmate David Sanford lost 239 days of good time credit for a disciplinary incident involving drug paraphernalia. Sanford now argues his due process rights were violated during the disciplinary process and that the punishment was excessively harsh. The Court directed the Warden to respond to the claims set forth in Sanford's petition, and the matter is now ripe for the Court's review.[1] For the reasons that follow, Sanford's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 will be **DENIED**.

David Sanford is currently housed at the United States Penitentiary—Big Sandy in Inez, Kentucky. In 2004, he was sentenced to a term of 240 months imprisonment for various controlled substance and firearm offenses. *See United States v. Sanford*, Case No. 1:03-cr-53-JAW-2 (D. Me. 2004). During March 2015, Sanford was incarcerated at the United States Penitentiary-Canaan in Canaan, Pennsylvania. On March 13, 2015, USP-Canaan staff conducted a visual search of Sanford's cell and identified a syringe placed inside of an altered three-inch-long pen. Accordingly, an incident report for the possession of drug-related paraphernalia was

---

[1] The Court provided Sanford with an opportunity to file a reply brief [*see* R. 5 at 2], but Sanford chose not to do so.

written against Sanford. [R. 8 at 2-3.] Sanford was provided a copy of the incident report. At the time, Sanford expressed a desire for a staff representative but declined the opportunity to present witnesses. [*Id.* at 4.]

After an investigation into the incident report was conducted, disciplinary proceedings against Sanford commenced. Sanford initially appeared before a disciplinary hearing officer ("DHO") on March 18, 2015, but that hearing was continued when Sanford expressed a desire to present witness testimony. [*Id.* at 4-5.] The final hearing took place on March 25, and the DHO ultimately found that Sanford committed the offense in question. The DHO sanctioned Sanford with the loss of 54 days of good conduct time and the forfeiture of 185 days of non-vested good conduct time, for a total of 239 days lost, in addition to other penalties. [R. 8 at 7.] Sanford then exhausted his administrative remedies and filed his habeas petition in this Court. [R. 1.]

The United States Supreme Court has articulated certain minimum procedures that prison officials must follow before taking away an inmate's good time credit during disciplinary proceedings. *See Sandin v. Conner,* 515 U.S. 472, 477-78 (1995); *Wolff v. McDonnell*, 418 U.S. 539 (1974). When a prisoner's good conduct time is on the table as a sanction, the prisoner is entitled to advanced, written notice of the charges; the opportunity to call witnesses and present other evidence in his or her defense; and a written decision explaining the grounds used by the DHO to determine the sanctions imposed. *Wolff*, 418 U.S. at 563-66.

All of these procedures were followed in Sanford's case. Sanford was provided the incident report within twenty-four hours of the incident and five days before the initial DHO hearing. [R. 8 at 17; R. 8-2 at 3-4.] Upon conclusion of the disciplinary proceedings, Sanford received a written copy of the DHO's decision which he used to exhaust his administrative remedies. [R. 8 at 20-21; R. 8-2 at 8, 22-26.] And Sanford was given the opportunity to present

2

evidence in support of his position. Although Sanford initially declined the opportunity to present witnesses, at the DHO hearing on March 18 he indicated a desire to call Officer T. Samson and Lieutenant R. Thomas to testify in support of his position. To accommodate Sanford's desire, the hearing was continued to March 25. [R. 8 at 5 n. 3.]

The record makes clear that the DHO considered Sanford's desire to call Officer Samson and Lieutenant Thomas as witnesses; however, the testimony off both witnesses was ultimately deemed non-exculpatory for Sanford. The DHO found Officer Samson's written testimony was adverse to Sanford's defense. Further, because Lieutenant Thomas was not actually present when the syringe was found in Sanford's cell, the DHO found his testimony to be irrelevant. [R. 8 at 6.] Nevertheless, Sanford was clearly given the opportunity to present testimony and call relevant, exculpatory witnesses in support of his position. The requirements of due process were therefore satisfied in Sanford's case. *See, e.g., Ponte v. Real*, 471 U.S. 491, 494-500 (1985) (explaining that an inmate's right to call witnesses in a DHO proceeding is a "limited" one); *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (finding that "a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony" and affirming the DHO's decision to exclude the testimony of officers not present for the incident).

In addition to following the *Wolff* procedures before sanctioning an inmate with the loss of good conduct time, a DHO's decision to revoke the good conduct time must be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). This "some evidence" threshold is a low one. The reviewing court need not examine the entire record, weigh evidence independently, or assess the credibility of witnesses. *Id.* at 455-56. Instead, "the relevant question is whether there is *any* evidence in the record that could support the conclusion

reached by the disciplinary board." *Id.* (emphasis added)*; see also Higgs v. Bland,* 888 F.2d 443, 448 (6th Cir. 1989).

Here, the record certainly contains evidence in support of the finding that Sanford committed the disciplinary violation. Although Sanford disputed ownership of the syringe and "argued the cell had milks and bananas on the floor" [*see* R. 8-2 at 25], the DHO ultimately rejected Sanford's version of the events. The DHO assigned greater weight to other evidence in the record that supported a finding of guilt, including a memorandum from Officer T. Samson, the eyewitness account of the reporting staff member, and photos of the drug paraphernalia. [*Id.*]

Finally, to the extent Sanford contends the loss of 239 days of good conduct time was disproportionate to the behavioral violation at issue [R. 1 at 8 (asking the Court to find that the sanctions "were overly severe for the infraction")], Sanford cites no legal authority in support of this position. As explained in the Warden's response brief, the sanctions imposed by the DHO were consistent with the severity level of Sanford's offense as well as his extensive disciplinary history while incarcerated. *See* 28 C.F.R. § 541.3 (classifying possession of drug paraphernalia as a "greatest severity level prohibited act" and allowing increased sanctions for "repetitive prohibited acts"); *see also Wallace v. Ebbert*, 505 F. App'x 124, 125 (3d Cir. 2012) (finding that the DHO's decision to remove good conduct time in excess of the "ordinary sanction" was permitted under 28 C.F.R. § 541.3, given the circumstances of the case).

In sum, the Court finds the minimum standards of due process were satisfied during Sanford's disciplinary proceedings. Furthermore, the Court has no reason to disturb the DHO's findings of guilt or the punishment imposed. Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

reached by the disciplinary board." *Id.* (emphasis added)*; see also Higgs v. Bland,* 888 F.2d 443, 448 (6th Cir. 1989).

Here, the record certainly contains evidence in support of the finding that Sanford committed the disciplinary violation. Although Sanford disputed ownership of the syringe and "argued the cell had milks and bananas on the floor" [*see* R. 8-2 at 25], the DHO ultimately rejected Sanford's version of the events. The DHO assigned greater weight to other evidence in the record that supported a finding of guilt, including a memorandum from Officer T. Samson, the eyewitness account of the reporting staff member, and photos of the drug paraphernalia. [*Id.*]

Finally, to the extent Sanford contends the loss of 239 days of good conduct time was disproportionate to the behavioral violation at issue [R. 1 at 8 (asking the Court to find that the sanctions "were overly severe for the infraction")], Sanford cites no legal authority in support of this position. As explained in the Warden's response brief, the sanctions imposed by the DHO were consistent with the severity level of Sanford's offense as well as his extensive disciplinary history while incarcerated. *See* 28 C.F.R. § 541.3 (classifying possession of drug paraphernalia as a "greatest severity level prohibited act" and allowing increased sanctions for "repetitive prohibited acts"); *see also Wallace v. Ebbert*, 505 F. App'x 124, 125 (3d Cir. 2012) (finding that the DHO's decision to remove good conduct time in excess of the "ordinary sanction" was permitted under 28 C.F.R. § 541.3, given the circumstances of the case).

In sum, the Court finds the minimum standards of due process were satisfied during Sanford's disciplinary proceedings. Furthermore, the Court has no reason to disturb the DHO's findings of guilt or the punishment imposed. Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Sanford's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1] is **DENIED**;

2. This action is **CLOSED** and **STRICKEN** from the Court's docket; and

3. Judgment will be entered contemporaneously herewith.

This the 18th day of May, 2021.

Gregory F. Van Tatenhove
United States District Judge